Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| JOSÉ ANTONIO BÁTIZ MELÉNDEZ<br><br>Apelado<br><br>v.<br><br>UNIVERSAL INSURANCE COMPANY<br><br>Apelante | KLAN202100787 | ***Apelación***<br>Procedente del Tribunal de Primera Instancia, Sala de Ponce<br><br>Sobre: Incumplimiento de Contrato; Daños y Perjuicios<br><br>Caso Núm.: JAC2011-0416 (602) |

Panel integrado por su presidente, el juez Rodríguez Casillas, la juez Rivera Pérez[1] y el juez Candelaria Rosa.[2]

Rodríguez Casillas, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de diciembre de 2023.

Universal Insurance Company (Universal o parte apelante) comparece ante nos para que revisemos la *Sentencia Enmendada por Orden del Tribunal Apelativo ("Sentencia Enmendada")* dictada el 27 de mayo de 2021 por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI), que le concedió al Sr. José Antonio Bátiz Meléndez (Sr. Bátiz o apelado) la suma de $100,000.00 en concepto de angustias mentales causados por incumplimiento en el pago de una póliza de seguros.

Considerado el recurso a la luz del derecho aplicable, resolvemos revocar la *Sentencia Enmendada* apelada. Veamos.

**-I-**

En agosto de 2011, el Sr. Bátiz presentó la acción de referencia contra Universal por incumplir su obligación de proveer

---

[1] Mediante la orden administrativa OATA–2022–065, la juez Rivera Pérez sustituyó a la juez Soroeta Kodesh.
[2] Mediante la orden administrativa OATA– 2023– 040, el juez Candelaria Rosa sustituyó a la juez Gina Méndez.

Número Identificador

SEN2023_____

cubierta por la pérdida de su propiedad en violación del contrato de seguros pactado entre las partes. En julio de 2017, el TPI dictó una Sentencia mediante la cual condenó a Universal a pagar al apelado las siguientes sumas: **(1)** $269,900.00 por concepto de pago de la póliza de seguros; **(2)** $100,000.00 por concepto de daños y angustias mentales por el incumplimiento del pago de dicha póliza; y **(3)** $15,000.00 en honorarios de abogado.

La Sentencia fue objeto de apelación ("Apelación Anterior"), y como resultado, en lo pertinente, mediante una Sentencia de 23 de junio de 2020, KLAN201701081 ("Sentencia del TA"), otro Panel de este Tribunal devolvió el asunto al TPI para que expusiera de forma específica los casos similares utilizados y los cómputos realizados para otorgar la cuantía concedida por **concepto de angustias mentales**. En cuanto a la apreciación de la prueba de daños, la Sentencia del TA indicó que

> [...] para que la parte apelada prevaleciera en su reclamo sobre los daños por el incumplimiento contractual del apelante que alegó, no bastaba que estableciera haber sufrido unos daños, sino que también precisaba establecer mediante la prueba que estos fueron previsibles al momento de haberse constituido la obligación (firma de la póliza) y consecuencia de la falta de cumplimiento. <u>Sin embargo, la aplicación del derecho expuesto dependía de la consideración de la prueba testifical desfilada, y la ausencia de la transcripción de la prueba oral nos ha negado la posibilidad de efectuar tan importante ejercicio, por lo que solo podemos confirmar las determinaciones de hechos del TPI al respecto.</u>[3]

La sentencia antes citada advino **final y firme e inapelable**, por lo que, devuelto el mandato al TPI, el 27 de mayo de 2021 dictó la *Sentencia Enmendada*. En esta, declaró que "[a]l momento las determinaciones de hechos del caso de epígrafe, así como las compensaciones concedidas y confirmadas son cosa juzgada. Por lo que procedemos a cumplir con la Sentencia del "TA", la cual en su

---

[3] Véase Apéndice del recurso, pág. 60.

parte dispositiva nos ordena que únicamente que con relación a los daños morales valorizados en cien mil dólares ($100,000.00), hiciéramos dicho computo según sus instrucciones".[4] Además, la Parte III y IV de la *Sentencia Enmendada* expresa, en lo pertinente, lo que a continuación transcribimos:

III.   DAÑOS Y PERJUICIOS CONTRACTUALES

[…]

En el caso de autos, del testimonio incontrovertido del demandante, éste demostró que esa propiedad era la casa de su vida. Que la había estado siguiendo hasta que se la compró al Banco Popular.

El intento de impugnación del testimonio del demandante Batiz [aquí apelado] no fue tan crítico. El demandante fue desalojado, tomó acciones dirigidas a su sustento y habitación. Todo en espera de una compensación la cual fue denegada por la demandada, quien teniendo la obligación de pagar por dicha pérdida/colapso, no lo hizo y provocó que el demandante, en su vida cotidiana, tuviera que utilizar su crédito, comprometiendo el mismo, en espera de su compensación por parte de la demandada, lo cual lo llevó a tomar dinero de su línea de crédito comercial para proporcionarse otra propiedad, no pudiendo satisfacer las obligaciones comerciales, a pesar de haber tomado los pasos necesarios para cumplir con su obligación, incluyendo una modificación de pagos en la cual se obligaba para con el Banco Popular a satisfacerle una suma no menor de setenta y cinco mil dólares ($75,000,00) dentro del término de cinco días luego del pago que recibiere de la reclamación sobre su propiedad localizada en Reparto Cerca del Cielo A-11, Ponce, Puerto Rico.

Con relación a los daños morales, hacemos referencia nuevamente a lo dicho en las DETERMINACIONES DE HECHO, 23, 24, 25 26 y 27, las cuales NO fueron modificadas ni revocadas por el "TA". Toda [sic.] esos sucesos y pérdidas, provocaron que la parte demandante [aquí apelado] sufriera profundos daños y angustias mentales, que lo llevaron de ser un comerciante próspero, con tres estaciones de gasolina, de las cuales dependían de una línea de crédito para generar ganancias, las cuales le generaban lo suficiente como para tener un hogar como el que tenía asegurado, a terminar conduciendo un taxi para ganar su sustento; tales daños morales ocurrieron como

---

[4] Véase Apéndice del recurso, pág. 4.

consecuencia directa del incumplimiento en el pago de la a[se]guradora Universal Insurance Company y se valoran en la suma de cien mil [$100,000.00] dólares.

Según la instrucción dadas por el "TA", a los únicos efectos de fundamentar la cantidad concedida de $100,000.00, en concepto de angustias mentales, adoptamos lo previamente expresado y procedemos a suplementar conforme al caso, *Santiago Montañez v. Fresenius Medical Care*, 195 DPR 476,490 (2016).

[…]

El "TA" ordenó que se modificara la Sentencia para que la misma reflejara a tenor con sus instrucciones, valorizaciones comparables de los daños que había adjudicado el "TPI" por la cantidad de $100,000.00, siguiendo lo establecido en el caso, *Santiago Montañez v. Fresenius Medical,* supra*.

Dicho caso requiere a los jueces detallar en sus dictámenes cuál fue el cómputo utilizado para determinar las cuantías concedidas, lo que necesariamente requiere plasmar los casos usados como referencia con sus citas y hechos, cuyas compensaciones o puntos de partida sean usados para la estimación y valoración de los daños.

[…]

Con relación a los cien mil ($100,000.00) dólares en concepto de angustias mentales, el normativo *Santiago Montañez v. Fresenius Medical,* supra, nos muestra aspectos metodológicos de la valorización del daño. En lo pertinente el mismo establece que la valorización del daño, no es una tarea judicial de fácil estimación o ejercicio matemático con resultados exactos y reconoce <u>que no existen dos casos exactamente iguales y que cada caso es distinguible según sus circunstancias particulares</u>.

Por lo tanto, en el fino ejercicio de hacer justicia, **un foro judicial está obligado a resolver y aquilatar daños aunque tenga ante sí una situación novel o una inexistencia de precedentes jurídicos exactos o parecidos. Entendemos que la ausencia de precedentes exactos o parecidos, no puede ser excusa u óbice para no dar una justa compensación o un valor razonable al daño. Aunque puedan existir casos parecidos, el ejercicio de valoración del daño involucra cierto grado de especulación y elementos subjetivos, tales como la discreción y el sentido de justicia y conciencia humana del juzgador de los hechos**. (Énfasis nuestro).

[...]

IV.   VALORIZACIÓN DEL DAÑO

De conformidad con el método adoptado en *Santiago Montañez v. Fresenius Medical*, supra, los Tribunales debemos de conseguir casos idénticos o parecidos y hacer comparaciones y correlaciones en los daños concedidos y si son casos antiguos, debemos de actualizar las compensaciones usando el índice de precios del consumidor que es adoptado por el Departamento del Trabajo y Recursos Humanos.

En el ejercicio de la valorización del daño, el "TA" en su Sentencia, página 26, nos ordena "*la cita de casos y los hechos de los casos anteriores cuyas compensaciones está comparando, así como los cómputos realizados, según la fórmula que para esos efectos fue establecida en Rodríguez et al. v. Hospital et al., 186 DPR 916 (2012). El ejercicio anterior no fue llevado por el TPI, y corresponde llevarse a cabo*".

No obstante, el caso *Rodríguez et al. v. Hospital et al.,* supra, indica que si la compensación es reciente, no se requiere ningún ajuste adicional.

**En el caso de auto[s], hemos realizado una búsqueda *exhaustiva* tratando de encontrar precedentes judiciales comparables en Puerto Rico y que sean idénticos o similares a los hechos de marras. Por la particularidad de los hechos, NO hemos encontrado jurisprudencia que justicieramente podamos comparar.** (Énfasis nuestro).

Lo más parecido que hemos encontrado es el caso *Ángel A. Jiménez Muñoz v. Haydee Vélez Valls*, KLAN 2011-01734 (LEXTA20130419-020) (2013-WL2313908), citado por el Lcdo. Antonio J. Amadeo-Murga, en su libro "El Valor de los Daños en la Responsabilidad Civil", Tomo 2, Tercera Edición (2019), Bosh Editor, pág. 980.

El problema con ese caso es que NO ES JURISPRUDENCIA, tampoco es una Opinión del "TA", es una mera Sentencia que confirma al TPI, por la razón de que el apelante no le brindó los elementos necesarios al "TA" para que el mismo entrara a revisar las compensaciones por daños morales, por lo tanto el foro revisor, dio deferencia a la apreciación de la prueba que hizo el juzgador de los hechos en el TPI.

En ese caso, el contrato incumplido era un acuerdo transaccional y por motivo de ese incumplimiento se arruinó económicamente el Sr. José Jiménez. En el caso de epígrafe, el contrato

incumplido es uno de seguro, en el cual el demandante tenía asegurado su hogar y al arruinarse el hogar, la compañía de seguros le manifestó por escrito que tenía cubierta hasta por $400,000.00, pero posteriormente se negó hacer pago alguno. El demandante de epígrafe, que esperaba y contaba con el pago del seguro, hace uso de una línea de crédito comercial, contando con el dinero que nunca le llegó. Así las cosas, incumple con sus acreedores y pierde tres (3) garajes de gasolina, pasando de próspero comerciante, a chofer de Taxi.

**Entendemos que incidiríamos en derecho y haríamos un flaco servicio a la justicia, si tomáramos como caso referencial el caso supra, toda vez que es una Sentencia del "TA", no una opinión y para colmo, el "TA" se vio en la obligación de confirmar al TPI, porque el apelante no los puso en posición de cuestionar el monto de los daños concedidos**. Por lo tanto, tales daños [$50,000.00] *per - sé*, son la óptica de un Tribunal *de igual jerarquía a la nuestra*. Contrario a los Tribunales del "Common Law" donde imperan por la naturaleza de su sistema, los precedentes judiciales, nuestro sistema es distinto, es uno de carácter civilista, donde casos resueltos por Sentencias, aún en el Tribunal Supremo, no tienen el efecto de ser precedentes obligatorios. (Énfasis nuestro).

**Por las razones antes expresadas, el caso *Ángel A. Jiménez Muñoz v. Haydee Vélez Valls*, KLAN2011-0173, no puede ser usado como el "Gold Standard" o caso referencial, para resolver la controversia del caso de autos. Pero tampoco podemos dejar desprovista a la parte de un remedio por la inexistencia de casos comparables y que le hagan justicia.** Hacer lo contrario o traer por los cabellos un caso con el ánimo de forzar una comparable, no sería algo complicado, pero inquietaría el ánimo y la conciencia de **este juzgador, que tuvo ante sí el beneficio del "demeanor" de las partes y escuchó de primera mano toda la prueba**. (Énfasis nuestro).

[…]

Nuestro más alto foro judicial en el caso *Santiago Montañez v. Fresenius Medical*, pág. 40 supra, con relación a la valoración del daño nos dice que el mismo "involucra cierto grado de especulación y elementos subjetivos, tales como la discreción y el sentido de justicia y conciencia humana del juzgador de los hechos. Además, el foro primario es el que tiene contacto directo con la prueba testifical presentada y, por ende, está en mejor posición de emitir juicio sobre la valorización de daños." **Por todo lo antes expresado se le impone al demandado el pago**

**de cien mil ($100,000.00) dólares por concepto de daños y angustias mentales más el interés legal post sentencia, esto sin perjuicio alguno en las compensaciones previamente confirmadas por el "TA" y sin perjuicio de los honorarios previamente eliminados. Tales asuntos constituyen cosa juzgada, y solo restaba dictar Sentencia Modificada, para finiquitar exclusivamente el asunto de los daños morales**. (Énfasis nuestro).[5]

Insatisfecho, el 10 de junio de 2021, Universal presentó una *Moción de Reconsideración*. En esencia, argumentó, que incidió el TPI al conceder la suma de $100,000.00 a pesar de que la prueba en el presente caso no fue suficiente para establecer la existencia de daños y angustias mentales. Señaló, además, que el TPI incumplió con el mandato de este Tribunal toda vez que no utilizó el procedimiento establecido jurisprudencialmente para la valoración de los daños.

El 23 de agosto de 2021, el TPI emitió una *Resolución* en la que denegó el reclamo de Universal. Concluyó que:

> Fue el demandado, Universal Insurance Company, quien produjo toda la sucesión de eventos que llevaron al demandante a perder sus negocios. Cabe señalar que de la prueba estipulada surgió un documento que demostraba que el demandante ciertamente tenía derecho a la reclamación, pero posteriormente otro funcionario de la parte demandada alegaba que no tenía derecho. Eso produjo la extensión de tiempo en este caso, que muy bien pudo haberse resuelto favorablemente para todas las partes.
>
> Al Tribunal no le queda la menor duda que los daños en concepto de angustias mentales por la cantidad indicada, es sumamente razonable y no exageradamente alta.

Insatisfecho, Universal acude ante este Tribunal de Apelaciones y alega que el TPI cometió el siguiente error:

> Incidió el Tribunal de Instancia al emitir el 27 de mayo de 2021, Sentencia Enmendada en la cual incumple con la instrucción específica de ese Honorable Tribunal de Circuito de Apelaciones en el recurso número KLAN201701081 de que "se ordena valoración del caso al foro apelado parra

---

[5] (Citas omitidas y énfasis en el original). Véase Apéndice del recurso, págs. 22-34.

[sic.] que efectúe la valoración de daños
concedidos en concepto de angustias mentales,
según las instrucciones que proceden.

El 7 de febrero de 2023, Universal presentó la transcripción del juicio, la cual se dio por estipulada. El 21 de abril de 2023, Universal presentó su alegato suplementario. Por su parte, el 30 de mayo de 2023, el Sr. Bátiz presentó su alegato en oposición. Así, quedó perfeccionado el caso de epígrafe.

**-II-**

La valoración del daño constituye un elemento fundamental en nuestro ordenamiento jurídico.[6] El concepto daño comprende tanto pérdidas patrimoniales como no patrimoniales. Los daños patrimoniales incluyen el valor de la pérdida sufrida y la ganancia dejada de obtener por un acreedor.[7] Entre los daños no patrimoniales, están comprendidos los daños físicos y las angustias mentales. Se consideran angustias mentales indemnizables aquellos daños de carácter emocional, tales como estados de pesar, sufrimiento, angustia, dolor y ansiedad causalmente relacionados con un acto culposo o negligente.[8] Para que una reclamación de este tipo proceda, es imprescindible probar sufrimientos y angustias morales profundas y no bastaría una pena pasajera como base de la acción.[9]

El proceso de valorar los daños es uno de los ejercicios de la función judicial más complejos, puesto que implica adjudicar un valor monetario a un daño que solamente puede ser aprehendido en toda su extensión por quien lo sufre. Las prácticas judiciales reiteradas dan un marco de referencia adecuado para que los tribunales puedan hacer dicha gestión estimatoria con alguna

---

[6] A. J. Amadeo-Murga, *El Valor de los Daños en la Responsabilidad Civil*, 2da Ed., Bosh Editor, 2012, pág. 19.
[7] Art. 1059 del Código Civil Derogado, 31 LPRA sec. 3023.
[8] *Elba A.B.M. v. U.P.R.*,125 DPR 294 (1990).
[9] *Ramos Rivera v. E.L.A.*, 90 DPR 828 (1964).

uniformidad.[10] No obstante, como no existen casos exactamente iguales y cada uno depende de sus propias circunstancias al momento de valorizar los daños, está implícito un ejercicio de discreción guiado por el sentido de justicia del juzgador.[11] La tarea de valorar el daño lleva consigo cierto grado de especulación e involucra elementos subjetivos del juzgador, tales como la discreción y el sentido de justicia y conciencia humana.[12]

Ahora bien, son los jueces de instancia los que están en mejor posición que los tribunales apelativos para hacer esta evaluación, toda vez que estos son los que tienen contacto directo con la prueba presentada.[13] Por ello, los foros revisores guardaremos deferencia a las valorizaciones de daños que hagan los foros de primera instancia.[14] De esta forma, los tribunales apelativos no habremos de intervenir con la valoración de daños que realiza el foro primario, salvo cuando la cuantía concedida resulte ridículamente baja o exageradamente alta.[15] Conviene mencionar que la base para esa estimación, lógicamente, es la prueba aportada, cuya apreciación por el foro primario está cobijada por una presunción de corrección.[16] En este último caso, estamos obligados a examinar la prueba desfilada ante el foro de instancia y las cuantías otorgadas en casos similares resueltos anteriormente.[17] Ciertamente, las indemnizaciones concedidas en casos anteriores constituyen un punto de partida y referencia útil para pasar juicio sobre las concesiones otorgadas por el foro primario; aun cuando no existen dos casos exactamente iguales y cada uno es distinguible según sus

---

[10] *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, 179 DPR 774 (2010).

[11] *Rodríguez et al. v. Hospital et al.*, 186 DPR 889 (2012).

[12] *Santiago Montañez v. Fresenius Medical Care,* 195 DPR 476 (2016).

[13] *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, supra.

[14] *Santiago Montañez v. Fresenius Medical Care,* supra.

[15] *Ibid.*

[16] Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2; *Blás v. Hosp. Guadalupe*, 146 DPR 267 (1998).

[17] *Santiago Montañez v. Fresenius Medical Care,* supra. Véase, además, *Suc. Mena Pamias y otros v. Jiménez Meléndez y otros,* 2023 TSPR 108, 212 DPR___ (2023).

circunstancias particulares.[18] En todo caso, las compensaciones otorgadas en casos anteriores deben ajustarse a su valor presente.

**Ante ello, nos vemos obligados a advertir a los jueces y las juezas sobre la importancia de detallar en sus dictámenes los casos que se utilicen como referencia o punto de partida para la estimación y valorización de daños y el cómputo realizado para establecer las cuantías que se concedan. Este llamado a los jueces y las juezas cobra importancia ante la necesidad imperante de instruir a las partes y a los miembros de la profesión jurídica en torno al método que se utiliza en ese difícil y angustioso proceso de estimar y valorar los daños. Habida cuenta de que esa tarea lleva consigo cierto grado de especulación, es forzoso explicar qué casos se utilizan como referencia y cómo las cuantías concedidas se ajustan en esos casos anteriores al caso que el tribunal tiene ante su consideración.**[19]

Una vez identificado un caso similar al que actualmente está bajo la consideración del juzgador, se debe calcular el valor presente de la indemnización a la fecha en que se dicta sentencia. Esto, por medio del método que utiliza el Índice de Precios al Consumidor (IPC), con el 2006 como año base.[20] El IPC es preparado mensualmente por el Negociado de Estadísticas del Departamento del Trabajo y Recursos Humanos (DTRH) para medir los cambios en el costo de vida en Puerto Rico.[21] El caso *Santiago Montañez v. Fresenius Medical*, supra, no solo constituye un precedente a seguir, sino que es aleccionador, ya que el Tribunal Supremo brindó

---

[18] *Rodríguez et al. v. Hospital et al.*, supra, págs. 909-910; *Herrera, Rivera v. S.L.G. Ramírez-Vicéns,* supra, pág. 785.

[19] (Énfasis nuestro). *Santiago Montañez v. Fresenius Medical Care,* supra, pág. 493.

[20] *Ibid*, pág. 496; *Rodríguez et al. v. Hospital et al.*, supra, págs. 913-914.

[21] Véase, tablas estadísticas disponible en la página cibernética del DTRH: http://www.mercadolaboral.pr.gov/Tablas_Estadisticas/Otras_Tablas/T_Indice_Precio.aspx. (última visita el 1 de diciembre de 2023). *Rodríguez et al. v. Hospital et al.*, supra, pág. 911; *Herrera Rivera v. SLG Ramírez–Vicéns,* supra, págs. 787-788.

múltiples ejemplos concretos de los dos pasos esenciales del procedimiento.

Es importante mencionar que, **en dicho análisis, puede darse el caso que las cuantías resultantes sean muy bajas. Ello responde probablemente a que las partidas concedidas en la sentencia comparable también lo eran, por lo que procedería aumentar la indemnización si las circunstancias particulares del caso ante el juicio del TPI lo justifican**.[22]

Claro está, quien solicite modificar la cuantía concedida tendrá el peso de la prueba.[23] De este modo, la parte que solicita la modificación de la indemnización concedida por el foro de instancia deberá demostrar que en efecto existen circunstancias que así lo justifican.[24] Sin embargo, a pesar de que la tarea de valoración de daños puede generar múltiples criterios, tal tarea debe residir, dentro de lo posible, en el juicio del juzgador de los hechos, enmarcado dentro de un análisis de razonabilidad. De no existir algún error manifiesto, parcialidad o prejuicio en tal apreciación, no corresponde nuestra intervención.[25]

### -III-

En el presente caso Universal señala que incidió el TPI al conceder una compensación de $100,000.00 sin que el Sr. Bátiz presentara prueba alguna para establecer la existencia de esos daños. Es decir, la parte apelante pretende que intervengamos con la apreciación de la prueba y la adjudicación de credibilidad del TPI, en esta segunda ocasión que acude ante nosotros. Sin embargo, estamos impedidos de considerar dicho planteamiento de error, pues el mismo ya fue adjudicado por este Tribunal en la Sentencia KLAN201701081. Mediante el referido dictamen, se confirmaron las

---

[22] (Énfasis nuestro). *Santiago Montañez v. Fresenius Medical*, supra, págs. 496-497.
[23] *Meléndez Vega v. El Vocero de PR*, 189 DPR 123 (2013).
[24] *Ibid.*
[25] *Ibid.*

determinaciones de hechos del TPI ante la ausencia de una transcripción de la prueba oral, resolviéndose así la controversia referente a la compensación por concepto de angustias mentales. Por tanto, entrar en los méritos de ese planteamiento de error equivaldría a restarle finalidad a un dictamen de este foro, el cual advino final y firme e inapelable y, por tanto, es concluyente entre las partes y no puede volverse a pasar juicio sobre la apreciación de la prueba ni de las determinaciones de hechos del TPI.

Aclarado dicho asunto, pasemos a evaluar <u>si en efecto el TPI aplicó el procedimiento que establece nuestro ordenamiento jurídico para la valorización de los daños, según el mandato recibido de este Tribunal</u>.

De lo transcrito en la Parte III y IV de la *Sentencia Enmendada* podemos ver que, el TPI declaró que encontró únicamente una Sentencia del Tribunal de Apelaciones de 19 de abril de 2013, *Ángel A. Jiménez Muñoz v. Haydee Vélez Valls*, KLAN201101734, del que se desprende que este Tribunal confirmó la compensación de $50,000.00 por los daños y angustias mentales como consecuencia del incumplimiento de un acuerdo de transacción judicial. Sin embargo, el TPI no utilizó dicho caso por considerar que la sentencia no constituía un precedente judicial para establecer la valorización de los daños por el incumplimiento en el pago de la póliza de seguros, y concluyó que era razonable valorar los daños en $100,000.00.

A nuestro juicio, aunque el TPI entendiese que el caso *Ángel A. Jiménez Muñoz v. Haydee Vélez Valls*, supra, no constituía un precedente judicial obligatorio para los tribunales de menor jerarquía por lo menos debió atribuirle a éste un alto valor persuasivo[26] para evaluar y conceder la partida de angustias

---

[26] Sabido es que las decisiones del Tribunal de Apelaciones solo pueden ser citadas con carácter persuasivo, pero no sientan precedente ni normativa

mentales, y luego seguir las directrices emitidas por el Tribunal Supremo a los efectos de ajustar la compensación al valor presente. Esto siempre considerando la posibilidad de que **la cuantía concedida en la sentencia comparable sea muy baja y que, en atención a ello, proceda conceder lo que corresponda de acuerdo con las circunstancias particulares del caso.**[27] La Sentencia del TA fue clara al ordenar al TPI que expusiera de forma específica los casos similares utilizados y los cómputos realizados para establecer la cuantía concedida por concepto de angustias mentales. No obstante, el TPI incumplió con el mandato expreso, final y firme de este Tribunal al no incluir dicho cómputo, por lo que su análisis estuvo incompleto. Por tal razón, procede revocar el dictamen apelado y devolver el caso a dicho foro para que incluya en su dictamen el cómputo realizado para determinar la cuantía otorgada y así conste en la sentencia.

**-IV-**

Por los fundamentos antes expuestos, se revoca la *Sentencia Enmendada* y se devuelve el caso al TPI para que, en el término de 30 días a partir del recibo del mandato, dicte una **nueva** sentencia conforme a lo expuesto en este dictamen.

Lo acordó y manda el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

aplicable. Regla 11(D) del Reglamento del Tribunal de Apelaciones. 4 LPRA Ap. XXII-B, R. 11(D). Véase, además, Art. 4.005 de la Ley de la Judicatura de 2003, 4 LPRA sec. 24x.

[27] Véase *Santiago Montañez v. Fresenius Medical*, supra, págs. 496-497.